# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILARIO M.R.,[1] | Case No. 1:26-cv-01154-JLT-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS AND DENY RESPONDENTS' MOTION TO DISMISS |
| v. | |
| WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, et al., | (ECF Nos. 1, 11) |
| Respondents. | |

Petitioner Hilario M.R., represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends denying the petition for writ of habeas corpus and denying Respondents' motion to dismiss.

**I.**

**BACKGROUND**

Petitioner is a noncitizen who first entered the United States legally with a visa in 1992. (ECF No. 17 at 2.[2]) On April 12, 2006, Petitioner was convicted of attempted kidnapping and sentenced to an imprisonment term of eighteen months. Upon his release from prison, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE"), served a final administrative removal order, and removed to Mexico on February 8, 2007. Hilario M.R. v.

---

[1] The Court partially redacts Petitioner's name to mitigate privacy concerns, as suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. See Memorandum Re: Privacy Concern Regarding Social Security & Immigration Opinions (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Page numbers refer to ECF page numbers stamped at the top of the page.

Warden, Mesa Verde Det. Ctr., No. 1:24-cv-00998-EPG-HC, 2025 WL 1158841, at *1 (E.D. Cal. Apr. 21, 2025).

Subsequently, Petitioner entered the United States without being admitted or paroled by an immigration officer. On February 25, 2021, Petitioner was convicted of driving under the influence and sentenced to ten days in jail and three years of summary probation. On August 17, 2023, Petitioner was arrested by ICE officers and served with a Notice of Intent/Decision to Reinstate Prior Order. Petitioner was later placed in withholding-only proceedings. Hilario M.R., 2025 WL 1158841, at *1.

On February 15, 2024, an immigration judge ("IJ") conducted a bond hearing and denied release, finding that the Department of Homeland Security ("DHS") met its burden to establish that Petitioner is a danger to the community. Petitioner did not appeal the decision to the Board of Immigration Appeals ("BIA"), and his two motions for reconsideration were denied. Hilario M.R., 2025 WL 1158841, at *1.

Petitioner applied for withholding of removal under section 241 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231, and deferral of removal under the United Nations Convention Against Torture. On July 29, 2024, the IJ denied Petitioner's applications for relief. On August 5, 2024, Petitioner filed a notice of appeal with the BIA. On December 23, 2024, the BIA remanded the proceedings back to the IJ. Hilario M.R., 2025 WL 1158841, at *2. Currently, Petitioner's asylum appeal is pending in the Ninth Circuit. Petitioner also has a pending I-130 application and a post-conviction relief motion under California Penal Code section 1473.7 that is still in progress. (ECF No. 17 at 4.)

Meanwhile, on August 22, 2024, Petitioner filed his first federal petition for writ of habeas corpus ("Petition I") in this Court. Hilario M.R., 2025 WL 1158841, at *2. On April 21, 2025, this Court granted Petition I in part and ordered Petitioner be provided "with an individualized bond hearing before an immigration judge that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011)[.]" Id. at *11.

On April 30, 2025, an IJ conducted a bond hearing pursuant to this Court's order. The IJ "concluded that the Department had met its burden to establish that [Petitioner]'s release would

pose a danger to the community and such a significant flight risk that no amount of bond would be appropriate" and denied the request for bond. (ECF No. 11-1 at 2.)  On May 29, 2025, Petitioner appealed the custody redetermination decision to the BIA.[3] (Id.) On June 9, 2025, the IJ issued a written memorandum to facilitate review of Petitioner's appeal. (ECF No. 11-1 at 2–8.)

On February 9, 2026, Petitioner filed the instant petition for writ of habeas corpus ("Petition II"). (ECF No. 1.) On March 5, 2026, Respondents filed a motion to dismiss. (ECF No. 11.) On April 2, 2026, the Court appointed counsel for Petitioner. (ECF No. 13.) On April 24, 2026, Petitioner filed an opposition to the motion to dismiss. To date, no reply in support of the motion to dismiss has been filed, and the time for doing so has passed.

**II.**

**DISCUSSION**

**A.  Successive Petition**

Respondents argue that "because Petitioner presents in Petition II *the same issues that were conclusively decided, or could have been conclusively decided*, in Petition I, the instant Petition should be dismissed with prejudice" pursuant to 28 U.S.C. § 2244(a). (ECF No. 11 at 2 (emphasis in original).) "However, § 2244(a) cannot apply to a § 2241 petition filed by an [immigration] detainee . . . because § 2244(a) bars successive petitions seeking review of the propriety of a detention '*pursuant to a judgment of a court of the United States.*'" Barapind v. Reno, 225 F.3d 1100, 1111 (9th Cir. 2000) (emphasis in original). Petitioner's immigration detention is "not pursuant to a judgment of a court of the United States. As such, the district court [would] err[] in applying AEPDA's gatekeeping provisions to [Petitioner]'s § 2241 petition." Id. Accordingly, the undersigned recommends finding that dismissal is not warranted pursuant to 28 U.S.C. § 2244(a).

The common law "doctrine of abuse of the writ generally 'forbids the reconsideration of claims that were or could have been raised in a prior habeas petition.'" Alaimalo v. United

---

[3] The record before the Court does not include any BIA decision of the appeal.

States, 645 F.3d 1042, 1049 (9th Cir. 2011) (citation omitted). A "successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." Alaimalo, 645 F.3d at 1049 (citations omitted). Petitioner argues that "a prolonged detention claim is inherently dynamic—it evolves as the detention grows longer. A challenge to 12 months of detention is fundamentally different from a challenge to 32 months of detention." (ECF No. 17 at 5.)  Petitioner also argues that "Petition II raises claims that could not have been raised in Petition I: namely, that the bond hearing Petitioner received was constitutionally inadequate. This claim did not exist when Petition I was filed because no bond hearing had yet occurred." (Id.)

The Court finds Petitioner's arguments persuasive and recommends finding that dismissal is not warranted under the abuse of writ doctrine.

### B.  IJ's 2025 Bond Decision

Petitioner asserts that the IJ's 2025 decision was "constitutionally deficient" because "while the IJ may have recited the correct burden of proof, the decision's failure to consider alternatives to detention and Petitioner's ability to pay a bond indicates that the IJ did not apply the full panoply of constitutionally required procedural protections." (ECF No. 17 at 5, 6.) Petitioner also argues that the IJ's decision did "not adequately grapple with the extraordinary length of Petitioner's detention." (Id. at 5.) Respondents contend that "[j]ust because Petitioner does not like the results of his bond hearing does not mean he may ask this Court to second guess the immigration judge's determination. In the habeas context, the question is whether the immigration judge applied the proper standard—not the immigration judge's weighing of evidence." (ECF No. 11 at 3 (citing C.A.R.V. v. Wofford, No. 1:25-cv-01395-JLT-SKO, 2026 WL 241823, at *3 (E.D. Cal. Jan. 29, 2026)).)

The Ninth Circuit has rejected Petitioner's argument that due process requires consideration of alternatives to detention:

> Nowhere in *Singh* did we suggest that due process also mandates

that immigration courts consider release conditions or conditional parole *before deciding that an alien is a danger to the community*. *Singh* offers the high-water mark of procedural protections required by due process, and we see no reason to extend those protections any further here.

Martinez v. Clark, 124 F.4th 775, 786 (9th Cir. 2024) (emphasis added) (distinguishing Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017), which found "Plaintiffs are likely to succeed on their challenge under the Due Process Clause to the government's policy of allowing ICE and IJs to set immigration bond amounts without considering the detainees' financial circumstances or alternative conditions of release," because Hernandez "rel[ied] on [an] *absence* of dangerousness or flight-risk determination in [its] procedural due process analysis"). Here, due process did not require the IJ to consider alternatives to detention *before* deciding that Petitioner is a danger to the community.

Additionally, in Hernandez, the Ninth Circuit only held that "Plaintiffs are likely to succeed on their challenge under the Due Process Clause to the government's policy of allowing ICE and IJs to set immigration bond amounts without considering the detainees' financial circumstances or alternative conditions of release . . . . in bond hearings for non-citizens who are determined *not to be a danger to the community and not to be so great a flight risk as to require detention without bond*." Hernandez, 872 F.3d at 1000 (emphasis added). Here, the IJ determined that Petitioner was "such a significant flight risk that no amount of bond would be appropriate." (ECF No. 11-1 at 3.) Therefore, due process did not require the IJ to consider Petitioner's financial circumstances.

Petitioner also argues that the IJ's decision did "not adequately grapple with the extraordinary length of Petitioner's detention." (ECF No. 17 at 5.) However, Petitioner does not cite to any authority that required the IJ to consider the length of Petitioner's detention in determining whether Petitioner is a danger to the community or risk of flight. See Martinez, 124 F.4th at 783 ("To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent" that does not include length of detention.).

Based on the foregoing, the undersigned recommends denying the petition to the extent it challenges the IJ's 2025 bond decision.

5

**C. Immigration Detention Statutes and Bond Hearings**

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Here, Petitioner is detained pursuant to 8 U.S.C. § 1231(a),[4] which provides:

> (1) Removal period
>
>> (A) In general
>>
>> Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
>>
>> (B) Beginning of period
>>
>> The removal period begins on the latest of the following:
>>
>>> (i) The date the order of removal becomes administratively final.
>>>
>>> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>>>
>>> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.
>>
>> (C) Suspension of period
>>
>> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.
>
> (2) Detention
>
>> (A) In general

---

[4] The Supreme Court has "held that § 1231(a) applies to individuals who are removed and who then reenter without authorization and apply for withholding of removal based on a fear that they will be persecuted or tortured if returned to their countries of origin." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575–76 (2022) (citing Johnson v. Guzman Chavez, 594 U. S. 523 (2021)).

6

During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

(B) Enforcement by attorney general of a State

The attorney general of a State, or other authorized State officer, alleging a violation of the detention requirement under subparagraph (A) that harms such State or its residents shall have standing to bring an action against the Secretary of Homeland Security on behalf of such State or the residents of such State in an appropriate district court of the United States to obtain appropriate injunctive relief. The court shall advance on the docket and expedite the disposition of a civil action filed under this subparagraph to the greatest extent practicable. For purposes of this subparagraph, a State or its residents shall be considered to have been harmed if the State or its residents experience harm, including financial harm in excess of $100.

(3) Supervision after 90-day period

If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien--

(A) to appear before an immigration officer periodically for identification;

(B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;

(C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and

(D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

(4) Aliens imprisoned, arrested, or on parole, supervised release, or probation

(A) In general

Except as provided in section 259(a) of Title 42 and paragraph (2), the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment. Parole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal.

(B) Exception for removal of nonviolent offenders prior to completion of sentence of imprisonment

The Attorney General is authorized to remove an alien in accordance with applicable procedures under this chapter before the alien has completed a sentence of imprisonment--

(i) in the case of an alien in the custody of the Attorney General, if the Attorney General determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense related to smuggling or harboring of aliens or an offense described in section 1101(a)(43)(B), (C), (E), (I), or (L) of this title[2] and (II) the removal of the alien is appropriate and in the best interest of the United States; or

(ii) in the case of an alien in the custody of a State (or a political subdivision of a State), if the chief State official exercising authority with respect to the incarceration of the alien determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense described in section 1101(a)(43)(C) or (E) of this title), (II) the removal is appropriate and in the best interest of the State, and (III) submits a written request to the Attorney General that such alien be so removed.

(C) Notice

Any alien removed pursuant to this paragraph shall be notified of the penalties under the laws of the United States relating to the reentry of deported aliens, particularly the expanded penalties for aliens removed under subparagraph (B).

(D) No private right

No cause or claim may be asserted under this paragraph against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

(5) Reinstatement of removal orders against aliens illegally reentering

If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

(6) Inadmissible or criminal aliens

An alien ordered removed who is inadmissible under section 1182

of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a).

"In particular, § 1231(a)(6) provides that after a 90-day 'removal period,'[5] a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable detention period of six months, a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

\\\

---

[5] "The removal period begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(1)(B)). "During the removal period, detention is mandatory." Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(2)).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in Zadvydas." Id. at 529. However, Justice Kennedy specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

"In a series of decisions, the [Ninth Circuit] . . . grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010). In Diouf v. Napolitano (Diouf II), 634 F.3d 1081 (9th Cir. 2011), the Ninth Circuit applied "the canon of constitutional avoidance and construe[d] § 1231(a)(6) as requiring an individualized bond hearing, before an immigration judge, for aliens facing prolonged detention under that provision" and held that "[s]uch aliens are entitled to release on bond unless the government establishes that the alien is a flight risk or will be a danger to the community."[6] Id. at 1086.

In Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), the Ninth Circuit, applying the canon of constitutional avoidance, held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" Rodriguez III, 804 F.3d at 1089 (quoting Diouf v. Napolitano

---

[6] Diouf II did not explain "what procedures would apply to the bond hearings that [the Ninth Circuit] read into § . . . 1231(a)(6)." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1199 (9th Cir. 2022). The Ninth Circuit "took up that question in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)," and relying on "general principles of procedural due process," held that "the government must prove by clear and convincing evidence that continued detention is justified based on the alien's flight risk or danger to the community," Rodriguez Diaz, 53 F.4th at 1199 (internal quotation mark omitted) (quoting Singh, 638 F.3d at 1200).

(Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)). In Jennings v. Rodriguez, 583 U.S. 281 (2018), the Supreme Court found the Ninth Circuit's interpretation that § 1226(c) included "an implicit 6–month time limit on the length of mandatory detention" fell "far short of a 'plausible statutory construction,'" and held that the Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Jennings, 583 U.S. at 304, 296, 306. The case was remanded to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit likewise remanded the case to the district court to consider the constitutional arguments in the first instance but observed that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

Following Jennings, the Ninth Circuit reexamined the applicable procedures for immigration detention under 8 U.S.C. § 1231(a)(6). Although "recogniz[ing] some tension between *Diouf II* and *Jennings*," the Ninth Circuit held that it "remain[ed] bound by *Diouf II*" and concluded that "that the district court did not err in relying on *Diouf II*'s construction of § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent" and "also properly required the Government to bear a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." Aleman Gonzalez v. Barr, 955 F.3d 762, 766 (9th Cir. 2020). The Supreme Court reversed, holding that 8 U.S.C. § 1252(f)(1) deprived the district court of jurisdiction to entertain the requested class-wide injunctive relief. Garland v. Aleman Gonzalez, 596 U.S. 543, 546 (2022). In Johnson v. Arteaga-Martinez, 596 U.S. 573 (2022), "a companion case decided that same day arising from the Third Circuit, . . . the Supreme Court separately rejected [the Ninth Circuit's] statutory interpretation in *Aleman Gonzalez* (which was itself based on *Diouf II*)." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201 (9th Cir. 2022). Arteaga-Martinez held that "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to

provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence" and declined to reach the constitutional claims. 596 U.S. at 581, 583. "[A]fter the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remains undetermined whether the Due Process Clause requires additional bond procedures under" 8 U.S.C. § 1231. Rodriguez Diaz, 53 F.4th at 1201.

**D. Prolonged Detention**

Petitioner contends "[d]etention without a bond hearing is unconstitutional when it exceeds six months," and even absent a bright-line six-month standard, his "detention without any individualized review, is unreasonable under the *Mathews v. Eldridge* due process test" or alternatively, "under the multi-factor reasonableness test the Third Circuit adopted in *German Santos v. Warden Pike Correctional Facility*, 965 F.3d 203, 211 (3d Cir. 2020)." (ECF No. 1 at 10, 12.)

Courts in the Ninth circuit have taken a variety of approaches to determine whether due process requires a bond hearing in a particular immigration detention case. See, e.g., Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (applying bright-line rule that "detention becomes prolonged after six months and entitles [the petitioner] to a bond hearing" in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (considering six factors, which include: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (considering, in addition to six factors set forth above, "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in § 1226(c) context), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (considering "the total length of detention to \\\

date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government" in § 1226(c) context).

There are also some courts that apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *3–4 (D. Or. Mar. 25, 2020) (collecting cases), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020). In Rodriguez Diaz, which concerned a noncitizen detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence," the panel majority "assume[d] without deciding" that the Mathews test applied, noting that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation." Rodriguez Diaz, 53 F.4th at 1219 (Wardlaw, J., dissenting). See also Black v. Decker, 103 F.4th 133, 147 (2d Cir. 2024) ("conclud[ing] that due process challenges to prolonged detention under section 1226(c) should also be reviewed under *Mathews*"); Guerrero-Sanchez v. Warden York Cnty. Prison, 905 F.3d 208, 225 (3d Cir. 2018) (applying Mathews "[i]n order to identify 'the specific dictates of due process'" in the context of § 1231(a)(6) detentions), abrogated by Arteaga-Martinez, 596 U.S. 573. Some courts look to whether the petitioner is requesting an initial bond hearing or a second bond hearing in deciding whether to apply the Mathews test because "[w]hile the Mathews factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." Djelassi v. ICE Field Office Dir., No. C19-491-RSM, 2020 WL 263670, at *2 (W.D. Wash. Jan. 17, 2020) (quoting Banda, 385 F. Supp. 3d at 1118).

\\\

13

Given that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," Rodriguez Diaz, 53 F.4th at 1193, and the fact that Petitioner is seeking a third bond hearing, the Court will apply the Mathews test. In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

    1.  Private Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The Ninth Circuit has held that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.' . . . Rodriguez Diaz has a legitimate and reasonably strong private liberty interest under *Mathews.*" (quoting Singh, 638 F.3d at 1208)).

However, the Court is cognizant that "it is important not to overstate the strength of [Petitioner]'s showing under the first *Mathews* factor," and that "under the first prong of the *Mathews* analysis, we cannot simply count his months of detention and leave it at that." Rodriguez Diaz, 53 F.4th at 1207, 1208. The Court has considered that Petitioner received two bond hearings before IJs where the government bore the burden of demonstrating that detention was warranted and acknowledges his "private interests are further diminished by the fact that he is subject to an order of removal from the United States." Rodriguez Diaz, 53 F.4th at 1208.

Based on the foregoing, the undersigned recommends finding that the first Mathews factor weighs slightly in favor of Petitioner.

### 2. Risk of Erroneous Deprivation

With respect to the second factor, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards. "In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention." Jensen v. Garland, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023) (citing Rodriguez Diaz, 53 F.4th at 1209–10 (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody determinations and right to seek additional bond hearings)).

On February 15, 2024 and April 30, 2025, Petitioner had individualized bond hearings before IJs where the government had the burden of establishing by clear and convincing evidence that Petitioner posed a danger to the community or a flight risk if released. The IJs found Petitioner to be a danger to the community and/or a flight risk and denied bond. Petitioner had the right to appeal those decisions to the BIA, and to the extent the agency made errors of law in denying Petitioner's request for release on bond, the decision "would also be subject to judicial review in habeas." Rodriguez Diaz, 53 F.4th at 1210. Like the petitioner in Rodriguez Diaz, the determination to detain Petitioner "was subject to numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker. These procedures ensured that the risk of erroneous deprivation would be 'relatively small'" at the time of Petitioner's first and second bond hearings. Rodriguez Diaz, 53 F.4th at 1210 (quoting Yagman v. Garcetti, 852 F.3d 859, 865 (9th Cir. 2017)).

After the Supreme Court's decision in Arteaga-Martinez, however, Petitioner does not have a statutory right to a bond hearing before an IJ. Applicable DHS regulations "generally require a custody review at the end of the 90-day removal period, a second review by a panel at

ICE headquarters after six months of detention, and subsequent annual reviews." Arteaga-Martinez, 596 U.S. at 583; 8 C.F.R. § 241.4. The noncitizen "may submit information in writing in support of his or her release" and "may be assisted by a person of his or her choice[.]" 8 C.F.R. § 241.4(h)(2). The regulations set forth criteria for release and factors to be weighed in considering detention or release. 8 C.F.R. §§ 241.4(e)–(f). Further, "[n]ot more than once every three months in the interim between annual reviews, the alien may submit a written request to the HQPDU [Headquarters Post-Order Detention Unit] for release consideration based on a proper showing of a material change in circumstances since the last annual review." 8 C.F.R. § 241.4(k)(2)(iii).

This Court previously stated:

> Although the Supreme Court has rejected the Ninth Circuit's application of the constitutional avoidance canon and its statutory interpretation of § 1231(a)(6), the Court finds Diouf II's discussion of the Mathews factors informative regarding the constitutional issues before this Court. With respect to the second factor, the Ninth Circuit found that "at the 180–day juncture, the DHS regulations are appropriate but not alone sufficient to address the serious constitutional concerns raised by continued detention" because the "regulations do not afford adequate procedural safeguards [as] they do not provide for an in-person hearing, they place the burden on the alien rather than the government and they do not provide for a decision by a neutral arbiter such as an immigration judge.[11]" Diouf II, 634 F.3d at 1091 (footnote in original). The Ninth Circuit subsequently rejected the argument that a noncitizen bearing the burden of proof at a bond hearing rendered § 1226(a)'s procedures constitutionally deficient. Rodriguez Diaz, 53 F.4th at 1210–12. However, § 1226(a) and its implementing regulations provide for the right to seek an additional bond hearing before an immigration judge based on materially changed circumstances, 8 C.F.R. § 1003.19(e), whereas a noncitizen detained under § 1231(a) may submit a written request for release consideration to an agency employee based on materially changed circumstances and a hearing is not required, 8 C.F.R. §§ 241.4(k)(2)(iii), (h)(1). Thus, in the context of § 1231(a), "the risk of an erroneous deprivation of liberty in the absence of a *hearing* before a *neutral decisionmaker* is substantial" as the time in detention lengthens. Diouf II, 634 F.3d at 1092 (emphasis added).

Hilario M.R., 2025 WL 1158841, at *9 (footnote omitted).

Diouf II's analysis was based on the fact that the statute did not provide for a hearing before a neutral decisionmaker. Here, however, Petitioner has been provided two bond hearings

before IJs where the government bore the burden of establishing by clear and convincing evidence detention was warranted. Additionally, unlike § 1226(c), where no additional procedures are mandated, DHS regulations provide annual custody reviews and Petitioner may request a new custody review once every three months based on materially changed circumstances. Further, Petitioner does not establish "the probable value, if any," Mathews, 424 U.S. at 334, of an additional bond hearing. Petitioner does not argue that there are changed circumstances or additional evidence not previously available that would likely result in a different outcome. Accordingly, the undersigned recommends finding that the second Mathews factor weighs against Petitioner.

3.   Government's Interest

With respect to the third and final factor, the Court recognizes that "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law'" and "has an obvious interest in 'protecting the public from dangerous criminal aliens.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). The Ninth Circuit has stated that "[t]hese are interests of the highest order that only increase with the passage of time," noting that "[t]he longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal" and "[t]he risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent." Rodriguez Diaz, 53 F.4th at 1208.

However, "the governmental issue at stake [here] is the ability to detain Petitioner *without providing him with another bond hearing*, not whether the government may continue to detain him." Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019) (emphasis in original). See Zerezghi v. U.S. Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020) (noting that "the question [under the third Mathews factor] is *not* the government's interest in immigration enforcement" "in general" (emphasis added)); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without

providing an individualized bond hearing is low.").

Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome. See Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) (noting in context of a § 1226(a) detention, the parties did not contest "that the cost of conducting a bond hearing, to determine whether the continued detention of Petitioner is justified, is minimal"); Singh v. Barr, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019) (noting in the context of § 1226(a) detention that "[t]he government has not offered any indication that a [ ] bond hearing would have outside effects on its coffers").

Accordingly, the undersigned recommends finding the third Mathews factor weighs in favor of Petitioner.

4. Conclusion

Based on the foregoing, the undersigned recommends finding that the low risk of erroneous deprivation outweighs Petitioner's private interest in freedom from prolonged detention and the government's weak interest in continuing to detain Petitioner without a third bond hearing and that due process does not compel a third bond hearing at this time. Should circumstances change, however, due process may dictate a different outcome.

**III.**

**RECOMMENDATION**

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be DENIED; and

2. Respondents' motion to dismiss (ECF No. 11) be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and

serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 9, 2026**          /s/ Erica P. Grosjean
                                  UNITED STATES MAGISTRATE JUDGE